UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-23343-CIV-HOEVELER/TURNOFF

MAPLEWOOD PARTNERS, L.P.,
MAPLEWOOD MANAGEMENT, L.P.,
and MAPLEWOOD HOLDINGS, LLC,

      Plaintiffs,

v.

INDIAN HARBOR INSURANCE COMPANY,

      Defendant.

_____/

## ORDER OVERRULING PLAINTIFFS' OBJECTIONS TO ORDER GRANTING MOTION TO COMPEL

THIS CAUSE comes before the Court on Plaintiffs' Objections to the Order entered by Magistrate Judge Turnoff on March 1, 2011, granting Defendant's motion to compel production of documents. Plaintiff filed Objections to that Order, claiming that the documents at issue – i.e., those documents responsive to the pending production request -- are privileged or protected from disclosure. Defendant disagrees, and requests that this Court overrule Plaintiffs' Objections.

As to those documents withheld on the basis of attorney-client privilege, the Court finds that the Order's application of the common interests doctrine is not clearly erroneous or contrary to law; thus, Plaintiffs' Objections are overruled as to those documents. As to the documents withheld on the basis of work product immunity, the Court finds that these documents are discoverable under the at-issue doctrine[1]; therefore, Plaintiffs' Objections are overruled.

---

[1] Magistrate Judge Turnoff observed that the at-issue doctrine was equally meritorious but did not specifically apply the doctrine to the questions before him at the time.

BACKGROUND

The instant case concerns a lawsuit between Defendant Indian Harbor
Insurance Company ("Defendant") and Plaintiffs MapleWood Partners, MapleWood
Management, and MapleWood Holdings ("Plaintiffs"). The suit is solely for breach
of contract of a directors and officers insurance policy to indemnify the cost of
defense fees and judgment or settlement amounts. Plaintiffs were sued in four
matters ("Underlying Matters") which all have been settled or defeated.[2]

In the course of discovery, Defendant served Plaintiffs with Document
Request Three and Four seeking:

> 3. All documents and communications between You and
> any of Your Agents, including but not limited to Brian
> Miller and/or other individuals at Akerman Senterfitt,
> LLP, and Michael F. Huber and Richard Hugh Lumpkin
> and/or other individuals at Ver Ploeg & Lumpkin,
> pertaining to the Underlying Matters.

> 4. All documents and communications pertaining to
> estimates, evaluations and/or assessments of your
> potential legal liability and/or settlement values in the
> Underlying Matters made by You and/or Your Agents.

Dkt. No. 39-4, at 2. Maplewood refused to comply with Indian Harbor's
discovery request, asserting that the requested documents were protected under
state law governing attorney-client privilege and federal law governing work-
product immunity. Defendant moved to compel discovery, arguing that the
documents in question were not privileged communications due to the common
interest exception and, in the alternative, that attorney-client privilege and work
product immunity had been waived due to selective disclosure and the at-issue

---

[2] The Underlying Matters are: Retail and Restaurant Growth Capital, L.P. v.
MapleWood Partners, L.P., et al., Case No. DC-07-01391-G (Dist. Ct., Dallas
County, Tex.); Shashy, et al. v. MapleWood Partners, L.P., et al., Case No. 07-05846
(Dist. Ct.,Dallas County, Tex.); Julio & Sons Company, et al. v. Shashy, et al., AAA
No. 50-180-T-00406-07 (American Arbitration Association, Miami, Florida) and a
supplemental counterclaim related thereto.

2

doctrine. Of the approximately 730 documents which Plaintiffs have identified in a privilege log in response to Defendant's discovery requests, more than 700 documents are being withheld on the basis of either work product immunity alone, or work product immunity as well as attorney-client privilege.  Dkt. No. 39-11. Approximately two dozen documents are being withheld solely on the basis of attorney-client privilege.

After a hearing, Magistrate Judge Turnoff granted Defendant's Motion to Compel, holding that the documents were discoverable because the common interests exception applied. Judge Turnoff did not specifically address Defendant's alternative arguments of waiver by disclosure or by the at-issue doctrine, but noted that these arguments were "equally meritorious."  Subsequently, Plaintiffs filed their Objections arguing that the Order was contrary to law and should be set aside in its entirety or, alternatively, that the documents should be subject to an *in camera* review prior to disclosure to opposing counsel.

## ANALYSIS

A United States District Court judge "may reconsider any pre-trial [order by a magistrate judge] . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Rule 72(a) of the Federal Rules of Civil Procedure provides that "the district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." A finding is clearly erroneous only if "the reviewing court, after assessing the evidence in its entirety, is left with a definite and firm conviction that a mistake has been committed." Krys v. Lufthansa German Airlines, 119 F.3d 1515, 1523 (11th Cir. 1997).  Under Local Magistrate Rule 4(a)(1), in reviewing a Magistrate Judge's order, the District Court Judge may also "reconsider *sua sponte* any matter determined by a Magistrate Judge under this rule." Therefore, the Court will review Magistrate Judge Turnoff's Order as to the application of the common interests exception, and also will address the alternative

3

arguments to compel production of the allegedly privileged and/or protected documents in question.

1. <u>Attorney-Client Privilege</u>

Rule 501 of the Federal Rules of Evidence provides in relevant part that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."  Under Florida law, the attorney-client privilege is codified in section 90.502 of the Florida Statutes which provides in relevant part:

> (1)(c) A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than
> > 1. Those to whom disclosure is in furtherance of the rendition of legal services to the client
> > 2. Those reasonably necessary for the transmission of the communication.
> (2) A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.

Fla. Stat. § 90.502(1)(c), (2).

2. <u>Work Product Immunity</u>

The weight of authority holds that federal law controls in disputes over work product immunity in diversity cases. <u>See</u>, <u>e.g.</u>, <u>Baker v. Gen. Motors Corp.</u>, 209 F.3d 1051, 1053 (8th Cir. 2000); <u>United Coal Cos. v. Powell Const. Co.</u>, 839 F.2d 958, 966 (3d Cir. 1988) ("Unlike the attorney-client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)."). Rule 26(b)(3) of the Federal Rules of Civil Procedure provides the standard for work product immunity in documents:

> (3) Trial Preparation: Materials.
> > (A) Documents and Tangible Things. Ordinarily, a party may not

4

> discover documents and tangible things that are prepared in
> anticipation of litigation or for trial by or for another party or its
> representative (including the other party's attorney, consultant,
> surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4),
> those materials may be discovered if:
>> (i) they are otherwise discoverable under Rule 26(b)(1); and
>> (ii) the party shows that it has substantial need for the materials
> to prepare its case and cannot, without undue hardship, obtain their
> substantial equivalent by other means.
> (B) Protection Against Disclosure.  If the court orders discovery of
> those materials, it must protect against disclosure of the mental
> impressions, conclusions, opinions, or legal theories of a party's
> attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3).   In Cox v. Admin. U.S. Steel & Carnegie, 17 F.3d 1386

(11th Cir. 1994), the Eleventh Circuit Court of Appeals interpreted the seminal case

Hickman v. Taylor, 329 U.S. 495 (1947), as well as its codification in Rule 26(b)(3),

to create two categories of work product immunity: fact work product and opinion

work product. Cox, 17 F.3d at 1422.

Opinion work product consists of materials prepared in anticipation of

litigation or for trial that reflect an attorney's mental impressions, conclusions,

opinions, or legal theories. Id. The Eleventh Circuit held that opinion work product

"enjoys a nearly absolute immunity" and cannot be discovered merely upon a

showing of substantial need and an inability to secure the materials by alternate

means without undue hardship, i.e., the test under Rule 26(b)(3)(A)(ii), but only in

"very rare and extraordinary circumstances." Id.; see Williamson v. Moore, 221 F.3d

1177, 1182 (11th Cir. 2000) ("extraordinary circumstances" may justify a waiver of

opinion work product). The rationale for this heightened protection of opinion work

product is revealed in the requirement in Rule 26(b)(3)(B) that if discovery is

ordered the court must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney concerning the litigation."

Fact work product includes all other documents and tangible things prepared in anticipation of litigation or for trial. Stern v. O'Quinn, 253 F.R.D. 663, 685 (S.D. Fla. 2008).  Fact work product is discoverable upon a showing of substantial need and undue hardship under Rule 26(b)(3)(A)(ii). Callaway v. Papa John's USA, Inc., No. 09-61989, 2010 U.S. Dist LEXIS 113274, 20-21 (S.D. Fla. Oct. 12, 2010).

b. Temporal Extent of Federal Work Product Immunity

Work product immunity has been asserted by Plaintiffs over documents prepared in anticipation of the Underlying Matters. Because the weight of authority holds that federal law provides the sole applicable standard for work product immunity in diversity cases, if this protection is limited to documents prepared in anticipation of the instant federal litigation, then no work product immunity whatsoever will extend to documents prepared for the Underlying Matters. The issue before the Court is whether federal work product immunity extends to documents being withheld by a party in a federal diversity suit, when those documents were created in connection with state court proceedings. In F.T.C. v. Grolier Inc., 462 U.S. 19 (1983), the Supreme Court reasoned in *dicta* that:

> Rule 26(b)(3) does not in so many words address the
> temporal scope of the work-product immunity, and a
> review of the Advisory Committee's comments reveals no
> express concern for that issue. But the literal language of
> the Rule protects materials prepared for *any* litigation or

6

trial as long as they were prepared by or for a party to the
subsequent litigation.

*Id.* at 20.  Although the issue in <u>Grolier</u> was whether federal work product
immunity applied to documents created in connection with an underlying federal
civil penalty case, in <u>Frontier Refining</u> the Tenth Circuit Court of Appeals applied
this reasoning to documents created in connection with underlying state court
proceedings. <u>Frontier Refining</u>,136 F.3d at 703 (third party diversity claim for
equitable implied indemnity of underlying personal injury settlement payments).
The court in <u>Frontier Refining</u> held that "Rule 26's language does not indicate that
the work product protection is confined to materials specifically prepared for the
litigation in which it is sought. Work product *remains protected even after* the
termination of the litigation for which it was prepared." <u>Id.</u> at 697 (emphasis
added); <u>see</u> <u>Milinazzo v. State Farm Ins. Co.</u>, 247 F.R.D.  at 700.  <u>But</u> <u>see</u> <u>Cozort</u>
233 F.R.D. at 676 (M.D. Fla. 2005) ("As the the coverage litigation was initiated,
litigated, and resolved solely in state court, Rule 26 of the Federal Rules of Civil
Procedure does not apply to any work product relating to that litigation.").

In <u>Milinazzo</u>, the court specifically addressed the issue of whether federal
work product immunity extends to documents prepared for trial in state court or in
anticipation of litigation in state court. Somewhat similar to Plaintiffs' cause of
action in the instant case, <u>Milinazzo</u> was an insurance diversity action for breach of
contract for failure to defend and indemnify the insured in an underlying state
lawsuit. <u>Milinazzo</u>, No. 07-21892, Dkt. No. 1, at 1-2.  The court in <u>Milinazzo</u> held

7

that federal work product immunity does extend to documents prepared in anticipation of underlying litigation in state court. Milinazzo 247 F.R.D. at 700 (noting in *dicta* that Cozort applied federal law in an unprincipled fashion and was "in derogation of well established principles of federal procedural law.").[3] Hence, the weight of authority holds that in diversity cases, federal work product immunity extends to documents prepared in anticipation of underlying state court litigation. Therefore, federal law controls on Plaintiffs' assertions of work product immunity.

## II. EXCEPTIONS AND WAIVERS

Magistrate Judge Turnoff's order relied upon the common interests exception to grant Defendant's Motion to Compel production of all the documents listed in Plaintiffs' privilege log.

### 1. Common Interests Exception

Plaintiffs object to Magistrate Judge Turnoff's application of the common interests exception to the withheld documents. The common interests exception to attorney-client privilege is codified in section 90.502(4)(e) of the Florida Statutes, which provides in relevant part:

> There is no lawyer-client privilege under this section when . . . a communication is relevant to a matter of common interest between two or more clients, or their

---

[3] Furthermore, in Milinazzo the court distinguished Cozort and its progeny as inapplicable to diversity actions against insurers for breach of contract, because the state law exception to state work product immunity which Cozort relied upon is only applicable to bad faith lawsuits against insurers. Milinazzo 247 F.R.D. at 700 ("Whether Cozort was right or wrongly decided on its facts is truly not relevant here for one obvious reason: this is not a bad faith case."). Similar to Milinazzo, the instant case does not concern a bad faith cause of action. See Dkt. No. 100 at 31.

> successors in interest, if the communication was made by
> any of them to a lawyer retained or consulted in common
> when offered in a civil action between the clients or their
> successors in interest.

Id.

### a. Application to Documents Withheld on the Basis of Attorney-Client Privilege

Plaintiffs argue that the language of the common interests statute, and cases interpreting it, require that the insurer and insured have been joint clients in the underlying lawsuits in order for the exception to apply. In support of this argument, Plaintiffs note that all of the cases Magistrate Judge Turnoff relied upon in the Order apply the common interest exception in the insurance context only where counsel has been retained by the insurer to represent the insured. See e.g., Liberty Mut. Fire Ins. Co. v. Kaufman, 885 So. 2d. 905, 907 (Fla. Dist Ct. App. 2004); Springer v. United Servs. Auto Ass'n, 846 So. 2d 1234, 1235 (Fla. Dist Ct. App. 2003).

In the instant case, Defendant did not retain defense counsel for Plaintiffs as there was no "duty to defend" obligation in the policy, but Defendant did indemnify Plaintiffs for a portion of defense expenditures from one of the underlying lawsuits. Thus, Defendant and Plaintiffs were not joint clients of defense counsel at Akerman Senterfitt, LLP ("Akerman"). However, the lack of the official status of joint clients is not fatal to the application of the common interests exception in cases where the substance of the litigants' relationship to the underlying defense counsel fulfills the statutory requirements of the common interests exception. At least one Florida

9

court has applied the common interests exception where one of the litigants was not a joint client of the attorney involved in the privileged communications. <u>See Omega Consulting Grp. Inc. v. Templeton</u>, 805 So. 2d 1058, 1060 (Fla. Dist Ct. App. 2002) (applying common interests exception to communications between corporate officer and corporate attorney in shareholder's derivative suit brought by shareholder against corporate defendant).

Here, Plaintiffs and Defendant did consult Akerman in common. Indeed, Akerman prepared a "Pre-trial Report" for Defendant containing an assessment of the financial and legal risks and benefits of settling and defending Plaintiffs in one of the Underlying Matters. Dkt. No. 39-1, at 5-6. Plaintiffs admit that Defendant paid Akerman to prepare this report. Dkt. No. 40, at 17.[4] Therefore, similar to cases such as <u>Kaufman</u> where an attorney represents both insurer and insured pursuant to a "duty to defend" obligation, in the instant case Defendant paid a portion of the defense expenses before all of the Underlying Matters were settled, was involved in the defense of the Underlying Matters[5] and shared a common interest in defeating liability in the underlying proceedings.

In spite of these similarities, Plaintiffs argue that the common interests exception does not apply in cases where an insurer asserts a reservation of rights or has no duty to defend. However, the court in <u>Kaufman</u> applied the common

---

[4] In fact, this Pre-trial Report was sent to Defendant's counsel in the instant case on February 9, 2010, after Plaintiffs' had filed their first Complaint (Dec. 4, 2008) and after Defendant made its interim allocation for the Underlying Matters (Jan. 27, 2009).

[5] <u>See</u> <u>e.g.</u>, Dkt. No. 40-11, at 2 (letter dated April 11, 2008, from Plaintiffs' counsel to Defendant's counsel seeking confirmation that Defendant consented to the settlement of one of the Underlying Matters).

interests exception even though the insurer specifically did assert a reservation of rights in defending the insured in the underlying lawsuit. <u>Kaufman</u>, 885 So. 2d. at 907. Therefore, Plaintiffs have failed to show that the Order's application of the common interests exception to the instant case is contrary to law. Given this determination, no attorney-client privilege attaches to any of the approximate 730 documents listed in Plaintiffs' privilege log, and the twenty two documents withheld solely on the basis of attorney-client privilege are discoverable.[6]

> ### b. Application to Documents Withheld on Basis of Work Product Immunity

Plaintiffs also contend that even if the state law-based common interests exception is applicable, it cannot waive federal work product immunity. In light of the Court's determination, above, that federal law controls issues of work product immunity, and that federal work product immunity extends to documents prepared in anticipation of underlying state court litigation, Plaintiffs' argument is correct. However, as discussed below, Plaintiffs' have waived federal work product immunity by putting the withheld documents at-issue, and therefore this basis for Plaintiffs' Objection is unavailing. Of the approximate 730 documents which Plaintiffs are withholding, approximately 708 documents are being withheld on the basis of either work product immunity alone, or as work product and attorney-client privilege.

---

[6] The Court need not reach the question of whether Defendant may have been able to establish a waiver of the attorney-client privilege through the state law standard for the at-issue doctrine, as I have determined that the common-interests exception to attorney-client privilege applies here.

### 2. "At-Issue" Waiver of Work Product Immunity

The doctrine of at-issue waiver is based upon the rationale that a party cannot withhold documents during discovery by invoking work product immunity if that party "injects into the case an issue that in fairness requires an examination of communications otherwise protected. . . ." Cox v. Admin. U.S. Steel & Carnegie, 17 F.3d 1386, 1422 (11th Cir. 1994).[7]

Plaintiffs argue that by requesting documents containing "estimates, evaluations and/or assessments of your potential legal liability and/or settlement values in the Underlying Matters," Defendant seeks production of opinion work product. As discussed above, documents containing an attorney's opinion work product can only be discovered in "very rare and extraordinary circumstances." Cox, 17 F.3d at 1422. It is therefore necessary to first determine if the doctrine of at-issue waiver constitutes such a circumstance, and then apply the relevant standard to the instant case.

### a. Availability of "At-Issue" Waiver of Opinion Work Product

In United States v. Nobles, 422 U.S. 225 (1975), the Supreme Court held that "the work-product doctrine is not absolute. Like other qualified privileges, it may be

---

[7] In Cox, a steel manufacturing company and a union were being sued by steel workers for, inter alia, violating the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, in negotiating benefits for workers. The civil suit was filed after the company and union were convicted of multiple felonies for violating 29 U.S.C. § 186. See Cox, 17 F.3d at 1394-95. The plaintiffs requested documents from the company's attorneys concerning the creation of its leave of absence policy, and documents from the union's attorney concerning statements made by union negotiators. Id. at 1421. The plaintiffs argued that opinion work product had been waived because the defendants put the documents at-issue by asserting that it thought its actions were legal, and by allowing one of its attorneys to testify at the criminal trial that it was unaware of the negotiators' actions. Id. at 1423.

waived." Id. at 239. Several courts have applied the at-issue doctrine to determine whether a party waived federal work product immunity. See _Insurance Corp. of Ireland, Ltd. v. Board of Trustees of So. Ill. Univ._, 937 F.2d 331, 334 n.3 (7th Cir.1991) (insurer seeking declaratory judgment regarding policy coverage of antitrust litigation waived work product immunity); Tolz v. Geico Gen. Ins. Co., No. 08-80663, 2010 U.S. Dist LEXIS 6709, at *14-15 (S.D. Fla. Jan. 27, 2010) (non-party attorney's opinion work product waived in auto-insurance diversity suit for bad-faith in handling of underlying state court personal injury suit); Stern v. O'Quinn, 253 F.R.D. 663, 676-77 (S.D. Fla. 2008) (attorney being sued in diversity lawsuit for state tort of slander and invasion of privacy waived opinion work product). But see Cox, 17 F.3d at 1422-23.

In Cox the Eleventh Circuit Court of Appeals held that opinion work product is only discoverable under "very rare and extraordinary circumstances." Id. at 1422. The Eleventh Circuit was confronted with the issue of whether or not the at-issue doctrine constitutes such a rare and extraordinary circumstance. The court in Cox held that the doctrine of at-issue waiver "does not extend to materials protected by the opinion work product privilege." Id. (citing In re Martin Marietta Corp., 856 F.2d 619, 625-26 (4th Cir.1988)). However, the Eleventh Circuit carefully limited its holding in Cox by specifying the circumstances where this limitation on at-issue waiver applies. The court stated that "[w]here a party asserts that he believed his actions to be lawful, he waives the attorney-client privilege as to what his attorney told him about the legality of his actions; his attorney's work product, however, is a

13

different matter." Id. at 1423. In Cox the withheld documents pertained to an element of a party's defense based on the *client's* thoughts and mental impressions. Thus, Cox recognizes the protection of an attorney's opinion work product from at-issue waiver where the issue injected into the heart of the litigation is a client's own thoughts and mental impressions.

Two subsequent cases have applied the at-issue doctrine as a waiver of opinion work product. Tolz, 2010 U.S. Dist LEXIS 6709 (Opinion work product "is not inviolate and may be invaded when the information contained within the work-product materials is directly at-issue."); Stern, 253 F.R.D. at 677, 685. Unlike in Cox, in Tolz[8] and Stern[8] the issue injected into the heart of the litigation concerned an *attorney's* thoughts and mental impressions. Tolz, 2010 U.S. Dist LEXIS 6709 (reasonability of refusing insurer's settlement offer in underlying lawsuit); Stern, 253 F.R.D. at 676 (validity and reasonability of defendant's belief behind allegedly slanderous statements).

As in Tolz and Stern, and unlike in Cox, the issue that Defendant argues has been injected into the heart of the instant case concerns the mental impressions and

---

[8]In Tolz documents were sought pertaining to an attorney's assessment of settlement demands and the strength of her client's claim against an insured in an underlying automobile accident case. These documents were sought a subsequent federal lawsuit brought by the insured's Chapter 7 bankruptcy trustee because of their relevance to the insurer's affirmative defense that the underlying plaintiff unreasonably refused the insurer's settlement offer. Tolz, 2010 U.S. Dist LEXIS 6709.

[8]In Stern, an attorney was sued for slander and invasion of privacy for allegedly stating on national television that plaintiff was responsible for the death of actress Anna Nicole Smith. Stern, 253 F.R.D. at 667. Documents reviewed by and produced for the attorney in an underlying custody dispute over the decedent's body were sought to the extent that they pertained to the credibility of his belief that the plaintiff was actually responsible for Ms. Smith's death. Id. at 670, 673.

opinions of Plaintiffs' attorneys in the Underlying Matters. Specifically, Defendant claims that by bringing the instant suit and contesting its interim allocation of coverage, Plaintiffs have put at-issue documents containing their attorneys' opinions and legal theories concerning the Underlying Matters. Because Defendant seeks to apply the doctrine of at-issue waiver to an issue based on an *attorney's* opinions and legal theories rather than his *client's*, the facts of this case fall within the parameters of those cases applying the at-issue doctrine as a waiver of work product immunity.

### b. *Application of "At-Issue" Waiver to the Instant Case*

While the doctrine of at-issue waiver is applicable to opinion work product, the Defendant must still satisfy all three elements of the test for at-issue waiver. The court in <u>Stern</u> stated:

> Under this doctrine, a party waives work-product or privilege protection when (1) assertion of the protection results from some affirmative act by the party invoking the protection; (2) through this affirmative act, the asserting party puts the protected information at issue by making it relevant to the case; and (3) application of the protection would deny the opposing party access to information vital to its defense.

253 F.R.D. at 676.

The court in <u>Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co.</u>, No. C-88-3440-DLJ, 1992 U.S. Dist LEXIS 20860 (N.D. Cal. Dec. 8, 1992) was also confronted with a motion to compel discovery of opinion work product documents related to the allocation clause of a directors and officers insurance policy. As in the instant case,

the plaintiff in <u>Safeway Stores</u> sought indemnity for the defense and settlement of claims against its directors and officers, and the parties disagreed as to the proper allocation. <u>Id.</u>

Similar to the allocation clause in the instant case, in <u>Safeway Stores</u> the allocation was based on the relative exposure of the plaintiff's officers and directors in comparison with uninsured defendants in the underlying lawsuits. The court held that "discovery into areas protected by . . . the work product doctrine is appropriate" because the plaintiff put those documents and other sources of information at-issue by bringing suit and contesting the defendant's allocation. <u>Id.</u> at 11.  Here Plaintiffs have haled Defendant into court by bringing the instant suit, and they have specifically contested Defendant's interim allocation between covered and uncovered losses. <u>See</u> Dkt. No. 1, at ¶¶ 61, 215 (Plaintiffs' Original Complaint); Dkt. No. 21, at ¶¶ 65, 231 (Plaintiffs' Amended Complaint); Dkt. No. 100, at ¶¶ 66, 129, 224 (Plaintiffs' Supplemental Amended Complaint). From the outset of the instant case, as part of the breach element in their breach of contract cause of action, Plaintiffs have argued that Defendant failed to make a "fair and appropriate" allocation of covered loss, and failed to properly "take into account the relative legal and financial exposures of, and relative benefits obtained in connection with the defense and/or settlement of the Claim by, the Insured and others." <u>Policy</u>, General Terms and Conditions, II.B.4 (allocation clause). Thus, Plaintiffs are asserting work product immunity resulting from their affirmative act of filing their Complaint and specifically referencing the policy's allocation clause,

i.e., making the protected information relevant to the case.[9]

Plaintiffs have brought a breach of contract suit alleging that Defendant did not make a fair and appropriate allocation of coverage. The insurance policy that Plaintiffs are suing upon requires the insurer and insured to weigh the legal and financial exposures and benefits of defending or settling lawsuits, when making an allocation. It follows then, that the reasoning behind the assessments made by Plaintiffs' attorneys is extremely relevant to the issue of what a fair and appropriate allocation would be. The attorneys' opinions regarding the nature of the underlying parties and claims, as well as the apportionment of legal exposure that contributed to final settlement amounts, go directly to the issue of allocating what matters and parties are covered.[10] Therefore, by challenging Defendant's allocation of coverage, Plaintiffs have put at-issue their attorneys' assessments of legal liability in the Underlying Matters.

Lastly, the documents Defendant requested are vital to its defense. To deny Defendant's request would deprive it of the sole source of information needed to compare the accuracy and propriety of the assessments (that informed its own

---

[9] Plaintiffs' argument that their assertion of work product immunity results from Defendant's reference to the allocation clause in its second and tenth affirmative defenses holds no merit. See Dkt No.109, at 29-30. These affirmative defenses are Defendant's arguments regarding allocation, made in response to Plaintiffs' specific pleading of the allocation clause in their Complaint.

[10] The descriptions of many documents identified in the privilege log do suggest a high degree of relevance to assessments of legal exposure and financial benefits of settling or defending, as reflected in: (1) the respective liability of all defendants in the Underlying Matters as it affected the final settlement amounts, see e.g., Bates range 016105-07, 016128-33, 017222-25, (2) respective exposure of each claim in the Underling Matters as they contributed to the final settlement amounts, see e.g., 015926-27, 016039-40, and (3) joint representation of parties in the Underlying Matters by Akerman and the apportionment of attorney's fees, see e.g., Bates range 014326, 014327, 015189-90, 016839-41, 016865, 016886-87.

allocation), to those relied upon by Plaintiffs. Therefore, by placing the Defendant's allocation of coverage at-issue, Plaintiffs have waived work product immunity over the remaining 708 documents identified in the privilege log.[11]

## CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Plaintiffs' Objections to the Order are OVERRULED, consistent with the above discussion.  Plaintiffs may submit to the Court for *in camera* review those select few documents which contain the work product of attorneys at Ver Ploeg & Lumpkin within ten (10) days from this date. Plaintiffs will produce to Defendant all other documents within ten (10) days from the date hereof.

DONE AND ORDERED in Chambers in Miami this ⎽⎽ day of September 2011.

_____
WILLIAM M. HOEVELER
SENIOR UNITED STATES DISTRICT COURT JUDGE

Copies furnished:
    Magistrate Judge Turnoff
    Counsel of record

_____

[11] Plaintiffs' Response to the Motion to Compel, and their Objections to Magistrate Judge Turnoff's Order, only refer to Akerman Senterfitt's work product immunity; however, the Court notes that a handful of the 708 work product documents listed in the privilege log detail correspondence between Plaintiffs' counsel in the instant suit, Ver Ploeg & Lumpkin, and their counsel in the Underlying Matters, Akerman Senterfitt. *See, e.g.,* Bates range 016110-23. Mr. Lumpkin of Ver Ploeg & Lumpkin represented to Magistrate Judge Turnoff, at the Hearing on Defendant's Motion to Compel, that some of these documents contain Ver Ploeg & Lumpkin work product pertaining to the Underlying Matters as well as the instant case. Dkt. No. 55, at 28-29.  To the extent that Plaintiffs are asserting a work product protection as to documents prepared by Ver Ploeg & Lumpkin after the parties' stipulated anticipation of litigation date (January 1, 2008), the Court will permit Plaintiffs to submit such documents for *in camera* review as to whether they must be produced to Defendant.