

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| MAPLEWOOD PARTNERS, L.P., <br> MAPLEWOOD MANAGEMENT, L.P., <br> and MAPLEWOOD HOLDINGS, LLC, <br><br> *Plaintiffs,* <br><br> vs. <br><br> INDIAN HARBOR INSURANCE COMPANY, <br><br> *Defendant.* <br> _____/ | CASE NO. 08-23343-CIV-HOEVELER <br> **Magistrate Judge Bandstra** |

**PLAINTIFFS' EMERGENCY MOTION TO STAY THE EFFECTS OF
THE COURT'S SEPTEMBER 6, 2011 DISCOVERY ORDER [DE 187]**

Plaintiffs, MapleWood Partners, L.P., MapleWood Management, L.P., and MapleWood Holdings, LLC, pursuant to Federal Rule of Civil Procedure 7(b), move this Court to stay the effects of the September 6, 2011 Order ("Order") [DE 187], pending final resolution of Plaintiffs' Motion for Reconsideration, or in the alternative, for Clarification, and non-Plaintiffs members of the Client Group's Emergency Motion for Intervention filed on September 19, 2011, and state as follows:

**I. INTRODUCTION**

Indian Harbor moved to compel disclosure of documents identified on Plaintiffs' privilege log as opinion work product and communications revealing legal advice provided by the law firms of Akerman Senterfitt ("Akerman") and Ver Ploeg & Lumpkin ("VPL"), respectively, to their clients MapleWood Partners, L.P. ("Partners"), MapleWood Management, L.P. ("Management"), MapleWood Holdings, LLC ("Holdings"), Robert Glaser, Robert Reale, Rick Levitt, Bill Tillet, Greg Morris, Lt. Gen. Burton Glosson and Glen Dell (collectively, the "Client Group"). DE 36.

Indian Harbor argued that none of the Plaintiffs within the Client Group could validly assert "attorney-client privilege" as against Indian Harbor on the theory that Indian Harbor also should be deemed a member of the Client Group under Section 90.502(e), Fla. Stat., which

171220_1

precludes one joint client from claiming privilege as against another joint client. In addition, although Defendant did not claim that it had "substantial need" for the documents withheld as opinion work product, it asserted that Plaintiffs could not claim opinion work product immunity on the theory that Plaintiffs had "waived" such a claim under two different theories of "subject matter waiver," including "at issue" waiver.

Plaintiffs opposed the motion on the merits and further requested that, if the Court were to nominally find any of the "subject matter" waivers alleged by Defendant, the Court conduct an *in camera* review of any documents to ascertain whether the documents corresponded to whatever "subject matter" the Court may have found to be placed at issue by Plaintiffs. Indian Harbor did not oppose Plaintiffs' request for an *in camera* review.

After briefing and oral argument, Magistrate Judge Turnoff issued an order on March 1, 2011, compelling production of all Akerman correspondence (but none of the VPL correspondence). DE 64. In granting the motion to compel, Magistrate Judge Turnoff held that Florida's statutory "joint-client" exception barred Plaintiffs' invocation of the attorney-client privilege and opinion work product as against Indian Harbor. Judge Turnoff alternatively held that Plaintiffs had "waived" their opinion work product claim under the "at issue" waiver doctrine to the extent that the documents withheld concern the same "allocation" matters that Plaintiffs "raised" in their pleadings herein.[1] DE 66.

On September 6, 2011, this Court issued its Order overruling Plaintiffs' objections. DE 187. Although the Court expressly found that Defendant was not a "joint client" of any member of the Client Group, it apparently held that Florida's statutory "joint client exception" applied to bar Plaintiffs' claim of attorney client privilege on the basis that Defendant should be *deemed* to be a "joint client" of any insured for which it has agreed to advance Defense Expenses, either fully or partially. *Id.* at 9. Apparently assuming that Defendant had recognized *all three* Plaintiffs as "insureds" for whom Defense Expenses would be advanced, the Court held that the statute precluded a privilege claim by *each* of the three Plaintiffs who had invoked the privilege in this litigation. *Id.* After Plaintiffs answered Defendant's motion to compel on December 12,

---

[1] Although not relevant here, Judge Turnoff also alternatively held that Plaintiffs "waived" all privileges claimed to the extent the "subject matter" of the withheld documents are the "same" as the subject matter of two documents that Akerman produced to Indian Harbor pursuant to Plaintiffs' production obligations under the Policy's cooperation clause. In any event, Plaintiffs rely on their prior filings respecting this alternative ground, namely, DE Nos. 40, 66 and 111.

2010 (DE 40), however, Defendant provided evidentiary and judicial admissions to Plaintiffs establishing that Defendant (i) did not recognize one of the Plaintiffs – Holdings – to be an "Insured" for which it would agree to advance Defense Expenses, and (ii) did not recognize one of the non-Plaintiffs within the Client Group – Robert V. Glaser – to be an "Insured" for whom it would agree to advance Defense Expenses. Ex. A [Defendant's Response to Plaintiffs' Second Request for Admissions]; DE 149 at 19. Thus, when this newly discovered evidence is considered under the Court's reasoning, at least two members of the Client Group are not precluded from asserting the attorney-client privilege against Indian Harbor. Moreover, because the actions of one joint client may not operate to vitiate the privilege jointly held by another joint client, the fact that Partners received certain advances of Defense Expenses (the purported act that would bar Partners from claiming privilege as against Indian Harbor) cannot operate to preclude Holdings or Mr. Glaser – *actual* joint clients of Akerman who have received nothing from Indian Harbor – from claiming the privilege. In addition, the Order's apparent holding that an insured that is not actually a joint client agrees, by its act of receiving an advance of Defense Expenses, to be "deemed" a joint client under the statute – and thereby waive its attorney-client privilege – overlooks controlling authority.

With respect to "opinion work product," the Order correctly held that the "joint client" statute, as a creature of state law, cannot govern claims of work product in federal court actions, as Judge Turnoff erroneously assumed. The Order, however, overlooked controlling authority when it held that the allegation of the pleadings filed by three members of the Client Group – the three Plaintiffs here – could "waive," under *Hickman v. Taylor*[2] or Rule 26(b)(3), opinion work product created for the non-Plaintiff entities within the Client Group who, as non-parties, are not alleged to have done anything to put anything "at issue" in this coverage litigation. At the very most, the Order should have barred Plaintiff from adducing any evidence at trial on something that the Plaintiffs have actually put at issue absent their securing a waiver from all parties who have the right to claim the immunity. Thus, because the Order compels production of _all_ of Plaintiffs' and non-Plaintiffs members of the Client Group's privileged communications and _all_ of Akerman's work product, including documents that have no bearing on allocation, Plaintiffs and non-Plaintiffs members of the Client Group are at imminent risk of suffering irreparable

---

[2] 329 U.S. 429 (1947).

harm should such sweeping discovery go forward. Plaintiffs, therefore, respectfully petition the Court for an emergency stay.

## II.   MEMORANDUM OF LAW

To obtain a stay pending review of Plaintiffs' motion for consideration, Plaintiffs must demonstrate (1) that they will suffer irreparable harm if a stay is not granted; (2) that Defendant will not suffer substantial harm if the stay is granted; (3) that the issuance of a stay will serve the public interest; and (4) a substantial likelihood of success on the merits of its appeal. *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986). In considering a motion to stay, the court must carefully weigh the competing interests of the moving and non-moving parties. *See MCC Mgmt of Naples, Inc. v. Arnold & Porter, LLP*, Nos. 2:07-cv-387-Ftm-29SPC, 2010 WL 2836627, at *1 (M.D. Fla. July 19, 2010) ("Any stay must be reasonable in terms of both duration and content, and "requires weighing competing interests and maintaining an even balance.").

As explained more fully below, analysis of each of these factors here compels granting a stay on the effects of the September 6th Order. Plaintiffs and non-Plaintiffs members of the Client Group will suffer irreparable harm if a stay is not granted; a stay will not prejudice Defendant; granting a stay will clearly serve the public interest as it will preserve the integrity of the attorney-client privilege and work product immunity; and Plaintiffs and non-Plaintiffs of the Client Group are likely to succeed on the merits of their motion for reconsideration and motion for intervention, respectively being filed contemporaneously with this Motion.

### A.   The Balance of Harms Favors a Stay as Plaintiffs and Non-Plaintiffs of the Client Group Will Suffer Irreparable Harm

The balance of harms weighs in favor of granting a stay because Plaintiffs and non-Plaintiffs of the Client Group will be irreparably harmed if they are forced to disclose their attorney-client privileged communications prior to this Court having an opportunity to rule on Plaintiffs' motion for reconsideration and non-Plaintiffs of the Client Group's motion for intervention. Courts recognize that a showing of likely irreparable harm will justify a stay even if the party seeking a stay is unable to show a substantial likelihood of success on the merits. *See Noriega v. Pastrana*, No. 07-CV-22816-PCH, 2008 WL 331394, at *2 (S.D. Fla. Jan. 31, 2008); *Nowak v. Lexington Ins. Co.*, No. 05-21682CIV-MORENA, 2006 WL 3613760, at *2 (S.D. Fla. June 22, 2006) (granting insurer's motion to stay order compelling production of attorney-client privileged communications because the insurer would be irreparably harmed if it were required

to produce its privileged communications); *In re Motor Fuel Temperature Sales Practices Litig.*, MDL No. 1840, 2010 WL 3724665 (D. Kan. Sept. 16, 2010) (movant was entitled to stay, notwithstanding that it was unlikely to prevail on the merits of its objections to the magistrate judge's order compelling production of attorney-client privileged documents because the public interest in ensuring that attorney-client communications remain protected favor granting the stay until the district judge had an opportunity to review the matter); *Martinez-Hernandez v. Butterball, Inc.* No. 5:07-CV-174-H, 2010 WL 4668472, at *3 (E.D.N.C. Nov. 9, 2010) (portion of magistrate judge's order, directing defendant to produce documents that defendant claimed were privileged was stayed pending the district court's ruling on the appeal because of the strong public policy reasons behind the attorney-client privilege); *see also In re Lott*, 424 F.3d 446, 450-52 (6th Cir. 2005) (discussing the harm caused by disclosure of attorney-client privileged communications and recognizing that the inability to cure an unlawful piercing of the privilege through direct appeal has led numerous courts to regularly utilize mandamus when important interests such as privilege are at issue).

Without the grant of a stay, Plaintiffs' and non-Plaintiffs of the Client Group will undoubtedly suffer irreparable harm as they will be forced to produce <u>all</u> of their privileged communications with Akerman and all work product, including opinion work product, generated in connection with the underlying litigation. Moreover, as explained in Plaintiffs' motion for reconsideration, while the primary basis for ordering discovery of Akerman's work product is that Plaintiffs' allegedly placed Indian Harbor's interim allocation "at issue," the Order does not take into consideration which aspects of the voluminous and otherwise protected material may address this very limited issue.[3] The Order also does not provide for *in camera* review of the vast majority of the otherwise privileged documents, and thus the risk of divulging documents that have no bearing on allocation, the issue that the Order assumes was placed "at issue" is high. Without a stay, Plaintiffs and non-Plaintiffs members of the Client Group will undoubtedly suffer irreparable harm.

---

[3] Although the Court in its September 6th Maplewood Order makes allowance for an *in camera* review of documents, it does so only with respect to "[t]hose few documents which contain the work-product of Ver Ploeg & Lumpkin . . ." and allows all other documents otherwise protected to be turned over directly to Indian Harbor with no review of relevance or content. DE 187 at 18.

CASE NO. 08-23343-CIV-HOEVELER

## B. Defendant Will Not Suffer Substantial Harm if the Stay is Granted

Conversely, a short stay pending review of Plaintiffs' motion for reconsideration and non-Plaintiffs motion for intervention will not harm or otherwise adversely affect Indian Harbor's ability to litigate this case. Plaintiffs will *not* be relying on its privileged communications with Akerman or Akerman's analysis or mental impressions to support its coverage claim. Nor do Plaintiffs' intend to offer a single document containing privileged communications or Akerman's opinion work product at trial.

Defendant also does not argue for summary judgment based on any contest over any application of the Allocation Clause's relative exposure provision. Defendant mentions the Clause only in passing, stating that the amount it advanced was the portion of Plaintiffs coverage claim that Defendant did not dispute, as the Clause requires. *See* DE 149. Even if one were to assume that the Allocation Clause applies, this Court would likely be unable to decide this issue on summary judgment. In *Clifford Chance, LLP v. Indian Harbor Insurance Co*, No. 602862/05, 2006 WL 3821841, at *5 (S.D.N.Y. Dec. 27, 2006), a case in which the Indian Harbor was a party, the court stated that determining relative exposure and weighing the benefits of a settlement and costs involves fact based analysis, which could not be decided based on summary judgment papers.

Moreover, as noted in Plaintiffs' motion for reconsideration, case law confirms that other means exist to analyze relative exposure, assuming allocation is even reached. *See* Plaintiffs' Motion for Reconsideration, or in the alternative, for Clarification filed on September 19, 2011 via CM/ECF (citing cases demonstrating that privileged and opinion work product documents are unnecessary to perform a relative exposure analysis). Indeed, Defendant conducted a relative exposure analysis more than three years ago when it proposed a 25 percent interim allocation for both the Shashy/Green and RRGC suits. Ex. B [April 18, 2008, Letter from Ross, Dixon & Bell]. For example, in responding to Plaintiffs' civil remedy (bad faith) notice, Defendant explained to the Florida Department of Financial Services why based on its analysis of the relative merits of the Shashy/Green and RRGC suits, a 25 percent allocation was fair and appropriate. DE 40, Ex. N [January 28, 2009, Letter from S. McNutt to Fla. Dep't of Financial Services]. Defendant was able to perform a relative exposure analysis without Plaintiffs' and non-Plaintiffs members of the Client Group's privileged communications or Akerman's opinion work product.

Defendant also has all the data it needs to try a relative exposure case. To date, Defendant has deposed Brian Miller, Plaintiffs' defense counsel in the RRGC suit, and Ernest Leonard, the attorney who represented RRGC in the lawsuit filed against Plaintiffs. During the depositions, both Mr. Miller and Mr. Leonard testified at length regarding the relative merits of the RRGC suit, including the parties' motivations for settlement. *See* Plaintiffs' Motion for Reconsideration, or in the alternative, for Clarification filed on September 19, 2011 via CM/ECF (providing the record cites for the relevant testimony). Defendant has also retained two experts, including Mr. Donald Colleluori, who rendered an opinion on the relative merits of the RRGC suit. When Plaintiffs' deposed Mr. Colleluori, not once did he equivocate by claiming inadequate information. *See* Ex. C (Donald Colleluori, Schedule B (listing the documents that Mr. Colleluori reviewed to conduct its relative expose analysis regarding the RRGC suit)). Because Defendant does not need Plaintiffs' privileged communications, nor Akerman's opinion work product to perform an allocation analysis, Indian Harbor will not be disadvantaged by a short stay.

### C. The Public Interest Favors a Stay

Staying the effects of the Order also serves the public interest because it will protect the integrity of the attorney-client privilege and work product doctrine. The attorney-client privilege is "the oldest of the privileges" and "encourages full and frank communication between attorneys and their clients and thereby promotes broader public interests in the observance of law and the administration of justice." *Upjohn v. U.S.*, 449 U.S. 383, 389 (1981); *Genovese v. Provident Life Acc. Ins. Co.*, 2011 WL 903988, at *2 (Mar. 17, 2011) ("'The purpose of the [attorney-client] privilege is to encourage clients to make full disclosure to their attorneys.'"); *Am. Tobacco Co. v. State of Florida*, 697 So. 2d. 1249, 1252 (Fla. 4th DCA 1997) (same).

The work product doctrine also serves an important function in the adversary system. The work product doctrine was articulated in the seminal case of *Hickman v. Taylor*, 329 U.S. 495 (1947), in which the U.S. Supreme Court rejected an "attempt without purported necessity or justification, to secure written statements, private memorandum and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." *Id.* at 510. The Court recognized that discovery of such information "falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims." *Id.* Thus, the Court stated, "[n]ot even the most liberal of discovery theories can justify

unwarranted inquiries into the files and the mental impressions of an attorney." *Id. See also Upjohn*, 449 U.S. at 398 (discussing *Hickman* and recognizing that "the 'strong public policy' underlying the work-product doctrine was . . . substantially incorporated in Federal Rule of Civil Procedure 26(b)(3)"); *Fojtasek v. NCL (Bahamas) Ltd*, 262 F.R.D. 650, 653 (S.D. Fla. 2009) (the work product doctrine protects "the vitality of the adversary system rather than simply seeking to preserve confidentiality."). Because of the strong public policy disfavoring disclosure of opinion work product and because the Order improperly compels production of 700 plus documents that contain opinion work product, a stay pending resolution of Plaintiffs' motion for reconsideration is justified to protect both the confidential nature of the documents and the vitality of the adversary system.

### D. Plaintiffs and Non-Plaintiffs of the Client Group are Likely to Succeed on the Merits of their Respective Motions

Plaintiffs and non-Plaintiffs members of the Client Group have a strong likelihood of succeeding on the merits of their respective motions for reconsideration and intervention.[4] As fully briefed in Plaintiffs' motion for reconsideration, this is the first opinion in which a Florida court has applied the "common interest" exception to allow an insurance company to invade the attorney-client privilege between a policyholder and its *independently* retained counsel. *See Noriega*, 2008 WL 331394, at *2 (finding that a stay was proper because the case was one of first impression and involved unique legal issues that no federal court had previously considered). As noted in MapleWood's previous objections, all of the decisions discussed in Judge Turnoff's Order involved counsel retained and paid by the insurance company to defend the policyholder under a policy where the carrier controls the defense and appoints counsel for a common purpose. *See* DE 67 at 11 (distinguishing authorities cited in Magistrate Judge Turnoff's Order). The September 6th Order acknowledges that in both *Liberty Mutual*[5] and *Springer*,[6] unlike in MapleWood's case, the insurer had provided their insured with defense counsel, justifying application of the common interest exception to attorney-client privilege. DE

---

[4] Plaintiffs and non-Plaintiffs of the Client Group incorporate by reference all of the arguments raised in Plaintiffs' Motions for Reconsideration, or in the alternative, Clarification and Non-Plaintiffs members' Motion for Intervention, filed on September 19, 2011, as reasons why they will succeed on the merits of its motion, thereby entitling it to a stay.

[5] *Liberty Mut. Fire Ins. Co. v. Kaufman*, 885 So. 2d 905 (Fla. 3d DCA 2004).

[6] *Springer v. United Services Auto. Ass'n*, 846 So. 2d 1234 (Fla. 5th DCA 2003).

187 at 9. Despite acknowledging these factually distinguishing characteristics, the Order erroneously concludes that the lack of joint client status between Plaintiffs' and Defendant does not defeat application of the common interest exception because the "substance of the litigants' relationship" somehow fulfilled the statutory requirements of the common interest exception. *Id.* As noted in Plaintiffs' motion for reconsideration, the Order's "substantial compliance" theory overlooks controlling authority establishing that the common interest exception is inapplicable in circumstances such as those at issue here where (i) the insured and insurer were not "joint clients" of defense counsel, (ii) the insured retained defense counsel and controlled the defense of the underlying litigations, and (iii) the insured had a reasonable expectation that its attorney-client communications with defense counsel would remain confidential *See* Plaintiffs' Motion for Reconsideration, or in the alternative, for Clarification filed on September 19, 2011 via CM/ECF (outlining the various reasons why the common interest exception is inapplicable). This is particularly true for both Plaintiff Holdings and non-Plaintiffs of the Client Group whom Defendant declined coverage and treated as non-insureds under the Policy. *See Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 70 (D.N.J. 1992), *rev'd on other grounds*, 124 F.3d 508 (3d Cir. 1997) ("There is no 'common interest' when the carrier claims there is no coverage for the underlying claim, and no justification in such circumstances for applying the common interest exception"); *NL Indus., Inc. v. Commercial Union Ins. Co. v. Certain Underwriters at Lloyds*, 144 F.R.D. 225, 232 (D.N.J. 1992) (where the insurer has refused to provide coverage or defend insureds, the mere status of an insurer and insured is not enough to apply the common interest exception to the attorney-client privilege).

Moreover, newly discovered evidence establishes that Plaintiff Holdings, Defendant and at least one member of the Client Group – Robert Glaser – could not under any theory have a "common interest," rendering the attorney-client privilege or work product immunity inapplicable. As explained in Plaintiffs' motion for reconsideration, after Plaintiffs answered Indian Harbor's motion to compel, Defendant provided evidentiary and judicial admissions to Plaintiffs establishing that Indian Harbor did not consider (i) Plaintiff Holdings to be an "insured" for which it would agree to advance Defense Expenses and (ii) Robert V. Glaser, one of the non-Plaintiffs within the Client Group, to be an "insured" for which it would agree to advance Defense Expenses. Thus, when this newly discovered evidence is considered under the Order's reasoning, at least two members of the Client Group are not precluded from asserting the

attorney-client privilege against Indian Harbor. And because the actions of one joint client may not operate to vitiate the privilege jointly held by another joint client,[7] the fact that Partners received certain advances of Defense Expenses (the purported act that prevents Partners from claiming the privilege and work product immunity against Indian Harbor) cannot operate to preclude Plaintiff Holdings and Mr. Glaser from claiming the privilege.

This is also the first opinion, which finds that challenging an insurer's interpretation of a policy exclusion – here the allocation clause – effects an "at issue" waiver overriding the attorney-client privilege and work product immunity even though the insured has no plans to use the documents to prove its case. As fully briefed in MapleWood's motion for reconsideration, the "at issue" doctrine applies "when a party 'injects' the privileged communication or work product information directly into the litigation: that is, where it is necessary to prove an element of a claim or defense." *See* Plaintiffs' Motion for Reconsideration, or in the alternative, for Clarification filed on September 19, 2011 via CM/ECF (citing authorities). Conversely, the "at issue" doctrine does not apply where the issue of "allocation" is an affirmative defense that, as such, has been injected into the case by the defendant, Indian Harbor. *Id.* As the court in *Tolz* recognized, an "insurer cannot inject an issue in [the] case and then claim the privilege has been waived by the other party." *Tolz v. Geico*, No. 88-80663-CIV-Marra/Johnson, 2010 U.S. Dist. LEXIS 6709, at *7-8 (S.D. Fla. Jan. 27, 2010) (reversing magistrate judge's order requiring policyholder to produce privileged material reasoning that the *insurer* injected the issue, not the policyholder) (quoting *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523 (11th Cir. 1997)). Plaintiffs have repeatedly stated that they will not be relying on privileged communications or Akerman's advice or mental impressions to defeat the allocation clause or to bear any burden at trial. Notwithstanding Plaintiffs' insistence, the Order erroneously found that the "at issue" doctrine constituted a ground for finding waiver of the work product immunity.

This is also the first case in which a whole production of attorney-client privilege and opinion work product is ordered without any relevance to the issue that was found to be placed "at issue" and without conducting *in camera* review. Although the Order found that "at issue" waiver extends to matters raised in the pleadings respecting allocation, the "result" appears to be a requirement that Plaintiffs produce all Akerman documents withheld as work product – even though none of those documents concern any of the three allocation issues raised in Plaintiffs'

---

[7] *See* Motion for Reconsideration filed on September 19, 2011 via CM/ECF (citing authorities).

pleadings. As clarified in Plaintiffs' motion for reconsideration, Plaintiffs raise three allocation issues: (i) the *legal issue* that the Policy's allocation clause cannot be interpreted as having been triggered by the allegations in the underlying claims, (ii) the *legal issue* that the allocation clause cannot be interpreted as applying to Defense Expenses of an amount less than the amount of the Retention; and (iii) the factual issue concerning *Indian Harbor's mental state*, namely, that Indian Harbor arbitrarily arrived at its initial "25%" allocation in 2008 (as reflected in the multiple and conflicting position letters cited in the coverage-action complaint). The work product documents in question, however, concern the merits of the underlying claims. Defendant argues that the "relative exposure" that flows from the merits of the underlying claims is another issue implicated by the allocation clause *if* the clause is triggered. Plaintiffs agree. But Plaintiffs argue that "relative exposure" is never reached here because the clause is *not* triggered, both as a matter of contract interpretation and as a matter of Indian Harbor's self-evident arbitrary initial allocation. *See* DE 150.[8] Plaintiffs have never raised in any pleading the "relative exposure" created by those merits. Moreover, as fully briefed in Plaintiffs' motion for reconsideration, the Order has overlooked controlling authority establishing that *no* member of the Client Group has put *any* allocation subject "at issue" within the meaning of the "at issue" waiver doctrine.

### III. CONCLUSION

Based on the foregoing, Plaintiffs request that this Court enter an order staying the effects of the September 6th Order [DE 187], pending final resolution of Plaintiffs' Motion for Reconsideration, or in the alternative, for Clarification and non-Plaintiffs of the Client Group's Motion for Intervention filed on September 19, 2011. Plaintiffs cannot say with absolute certainty that they will prevail on the merits with this Court but are attempting to undertake what is an unnecessary interlocutory appeal; thereby creating the risk of reversal, which the Order tends to prevent. We don't want to try this case twice either.

---

[8] An unredacted copy of Plaintiffs' Motions for (1) Judgment Dismissing Affirmative Defenses under Rule 12(c) and Rule 56, and (2) Partial Summary Judgment was filed under seal on August 23, 2011.

CASE NO. 08-23343-CIV-HOEVELER

## CERTIFICATION OF GOOD FAITH CONFERENCE; CONFERRED BUT UNABLE TO RESOLVE THE ISSUES PRESENTED IN THE MOTION

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

DATED this 19th day of September, 2011.

Respectfully submitted,

**John W. Schryber**
schryberj@dicksteinshapiro.com
**Jeffrey L. Schulman**
schulmanj@dicksteinshapiro.com
**DICKSTEIN SHAPIRO LLP**
1825 Eye Street N.W.
Washington, DC 20006
Phone: 202-420-2200
Fax: 202-420-2201

**R. Hugh Lumpkin, Esq.**
Florida Bar No. 308196
hlumpkin@vpl-law.com
**Michael F. Huber, Esq.**
Florida Bar No. 765171
mhuber@vpl-law.com
**Maria R. Caldera, Esq.**
Florida Bar No. 58323
mcaldera@vpl-law.com
**VER PLOEG & LUMPKIN, P.A.**
100 S.E. Second Street
Thirtieth Floor
Miami, FL 33131-2151
Phone: 305-577-3996
Fax: 305-577-3558

*Attorneys for Plaintiffs*

CASE NO. 08-23343-CIV-HOEVELER

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served via e-mail and U.S. mail on this 19th day of September, 2011 on all counsel of record on the Service List below.

_____
R. Hugh Lumpkin

## SERVICE LIST

**David M. Gische, Esq.**
david.gische@troutmansanders.com
**Prashant K. Khetan, Esq.**
prashant.khetan@troutmansanders.com
**Steven W. McNutt, Esq.**
steven.mcnutt@troutmansanders.com
TROUTMAN SANDERS, LLP
401 9th Street, N.W., Suite 1000
Washington, DC 20004-2134
Phone: 202-662-2000
Fax: 202-274-2994

**Michael J. Higer, Esq.**
mhiger@hlglawyers.com
HIGER, LICHTER & GIVNER, LLP
18305 Biscayne Boulevard
Suite 402
Aventura, FL 33160-2172
Phone: 305-356-7544
Fax: 305-933-0998

*Attorneys for Defendant Indian Harbor Insurance Company*