UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 08-23343-CIV-HOEVELER

MAPLEWOOD PARTNERS, L.P.,
MAPLEWOOD MANAGEMENT, L.P.,
and MAPLEWOOD HOLDINGS, LLC,

Plaintiffs,

v.

INDIAN HARBOR INSURANCE COMPANY,

Defendant.

Hon. Judge William M. Hoeveler

Hon. Magistrate Judge Ted E. Bandstra

## DEFENDANT INDIAN HARBOR INSURANCE COMPANY'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, FOR CLARIFICATION OF ORDER OVERRULING PLAINTIFFS' OBJECTIONS TO ORDER GRANTING MOTION TO COMPEL [DE 187]

Defendant, Indian Harbor Insurance Company ("Indian Harbor"), submits this Opposition to Plaintiffs' Motion for Reconsideration, or in the Alternative, for Clarification of Order Overruling Plaintiffs' Objections to Order Granting Motion to Compel [DE 187] (the "Motion").

### INTRODUCTION

In its Order Overruling Plaintiffs' Objections to Order Granting Motion to Compel (the "Order," D.E. 187), this Court correctly held that the MapleWood Entities[1] had to produce all of the documents at issue because: 1) due to the common interest exception, the attorney-client privilege did not apply; and 2) work product immunity had been waived under the doctrine of at-

---

[1] Plaintiffs MapleWood Partners, L.P. ("MapleWood Partners"), MapleWood Management, L.P. ("MapleWood Management") and MapleWood Holdings, LLC ("MapleWood Holdings") are collectively referred to as the "MapleWood Entities."

1

Higer Lichter & Givner

issue waiver. Although the MapleWood Entities have moved for reconsideration of the Court's Order, they ignore the standard for such motions as imposed by this Court: motions for reconsideration are disfavored and should be granted only when the movant shows newly discovered evidence, clear error, manifest injustice, or an intervening change in law; and a motion for reconsideration should not be used to reiterate arguments previously made or as a vehicle to present authorities available at the time of the first decision. Here, the MapleWood Entities do not identify any newly discovery evidence or intervening change in law. And far from showing "clear error" or "manifest injustice," the Motion re-casts arguments that have been fully briefed in several prior submissions by the MapleWood Entities, including their 20-page Response in Opposition to Defendant's Motion to Compel (D.E. 40), 20-page Objections to Judge Turnoff's Order Granting Motion to Compel (D.E. 66) and 10-page Reply in Further Support of Objections to Order Granting Motion to Compel (D.E. 111), as well as presented in an oral argument before Magistrate Judge Turnoff. In so doing, not only do the MapleWood Entities mischaracterize Indian Harbor's position on various issues, but they mischaracterize their own prior arguments and, perhaps most egregious, this Court's Order. By using the Motion as a vehicle to re-litigate their prior arguments (already rejected twice), the MapleWood Entities fail to meet the exceptionally high threshold needed to warrant reconsideration.

Likewise, the MapleWood Entities' request for clarification should be denied, as it is merely a backdoor attempt, contrary to law, at narrowing the relief already granted to Indian Harbor. Indeed, the Court's Order is very clear.

For these reasons, and those set forth more fully below, this Court should deny the MapleWood Entities' Motion in its entirety and order production of the documents at issue.

**ARGUMENT**

**I.     THE MAPLEWOOD ENTITIES CANNOT MEET THE EXCEPTIONALLY HIGH THRESHOLD NEEDED TO WARRANT RECONSIDERATION**

Reconsideration is an "extraordinary remedy to be employed sparingly." *Bautista v. Cruise Ships and Service Int'l, N.V.*, 350 F. Supp. 2d 987, 992 (S.D. Fla. 2004) (citation omitted). As a result, "[t]his court has repeatedly stated that motions for reconsideration are disfavored and should be granted only when the movant shows newly discovered evidence, clear error, manifest injustice, or an intervening change in law." *See, e.g., Garcia v. United States*, No. 01-945, 2002 U.S. Dist. LEXIS 23962, at *1-2 (S.D. Fla. Nov. 4, 2002). On the other hand, and particularly relevant here, "a motion for reconsideration should not be used to reiterate arguments previously made or as a vehicle to present authorities available at the time of the first decision." *See Scheck v. Burger King Corp.*, 798 F. Supp. 692, 693 n.2 (S.D. Fla. 1992); *see also Mid-Continent Cas. Co. v. Centerline Homes Constr., Inc.*, No. 10-60484, 2011 U.S. Dist. LEXIS 93995, at *5-6 (S.D. Fla. Aug. 23, 2011) (holding that the movant was unable to meet the "high bar necessary to succeed on a motion for reconsideration" because it "simply reiterates its previous arguments and presents arguments previously available but not raised"). Thus, the party seeking reconsideration bears the "burden of showing that absent such relief, an 'extreme' and 'unexpected' hardship will result." *See Solomon v. DeKalb County*, 154 Fed. Appx. 92, 93 (11th Cir. 2005). As set forth below, the MapleWood Entities make no such showing.

**II.     THE MAPLEWOOD ENTITIES DO NOT IDENTIFY ANY *NEW* EVIDENCE**

The MapleWood Entities cast as "newly discovered evidence" Indian Harbor's position that neither MapleWood Holdings nor Robert Glaser is an "Insured" under the applicable Policy. *See* D.E. 217 at 5-6. The evidence, however, shows that the MapleWood Entities have known of Indian Harbor's position for a long time; in fact, they previously cited to this "new" evidence.

Higer Lichter & Givner

First, Indian Harbor's position that MapleWood Holdings is not an Insured has been known to the MapleWood Entities since 2007 and *was acknowledged multiple times in their prior briefing in conjunction with Indian Harbor's motion to compel that is at issue here*. Indian Harbor has taken the position that MapleWood Holdings is not an Insured under the Policy in a number of coverage letters starting as early as June 2007. *See, e.g.*, June 20, 2007 letter from Cathy Simon to Robert Glaser (Ex. A), at 6-7 (explaining that MapleWood Holdings does not appear to be an Insured under any of three potentially relevant Coverage Parts of the Policy); November 13, 2007 letter from Cathy Simon to Brian Miller (Ex. B), at 3 (responding to counsel for the MapleWood Entities' query by explaining why "Indian Harbor continues to believe that coverage is not available" to MapleWood Holdings). Even the MapleWood Entities' counsel wrote letters to Indian Harbor acknowledging this position. *See, e.g.*, October 12, 2007 letter from Brian Miller to Cathy Simon (D.E. 40, Ex. J), at 2 (explaining, in a chart, the MapleWood Entities' understanding of Indian Harbor's coverage position that there is no coverage for MapleWood Holdings under any of three potentially relevant Coverage Parts of the Policy). Moreover, in their opposition brief to Indian Harbor's motion to compel that is at issue here (filed on December 10, 2010), the MapleWood Entities characterized Exhibit G, coverage correspondence from Cathy Simon to Robert Glaser, as:

> [A] July 9, 2007, Letter from Cathy Simon to Robert Glaser (Exhibit "G") (acknowledging that MapleWood Partners qualified as an Insured under the policy *but denying coverage for* Julio Investors, [and] *MapleWood Holdings*[.]

*See* D.E. 40 at 4 (emphasis added). Subsequently, Indian Harbor re-confirmed its position that MapleWood Holdings does not qualify as an Insured under the Policy. *See* D.E. 217, Ex. B (Response to Plaintiffs' Third Request for Admissions), at Nos. 25-36. After Judge Turnoff granted Indian Harbor's motion to compel, the MapleWood Entities filed their Objections, in

which they again acknowledged (citing Exhibit G to their opposition brief) Indian Harbor's position that MapleWood Holdings was not an Insured under the Policy. *See* D.E. 66 at 12 n.4.[2]

Similarly, the MapleWood Entities erroneously contend that Indian Harbor's coverage position with respect to Mr. Glaser, as set forth in Indian Harbor's Response to Plaintiffs' Second Request for Admissions (*see* D.E. 217, Ex. A), is "new evidence." This argument is factually incorrect because: (i) Indian Harbor's coverage position stated therein is entirely consistent with its coverage position since 2007;[3] and (ii) the MapleWood Entities attached coverage correspondence reflecting this position to prior briefing in this discovery dispute. *See* July 9, 2007 letter from Cathy Simon to Robert Glaser (D.E. 40, Ex. G), at 6-9 (explaining that Mr. Glaser appears to qualify as an Insured under the IAML and IAPL Coverage Parts, but reserving rights with regard to whether a Claim for a Wrongful Act has been asserted against him); October 12, 2007 letter from Brian Miller to Cathy Simon (D.E. 40, Ex. J), at 2 (explaining, in a chart, the MapleWood Entities' understanding of Indian Harbor's position that coverage for Mr. Glaser under all three potentially applicable Coverage Parts was subject to a reservation of rights). Furthermore, Indian Harbor served its Response to Plaintiffs' Second Request for Admissions on February 16, 2011; accordingly, this "evidence" was available when the MapleWood Entities filed their Objections to Judge Turnoff's Order.

---

[2] Notably, in their Opposition to Indian Harbor's Motion for Summary Judgment, the MapleWood Entities do not contest Indian Harbor's argument that MapleWood Holdings does not qualify as an Insured under the Policy. *Compare* D.E. 149 at 19, *with* D.E. 194.

[3] The MapleWood Entities misrepresent Indian Harbor's coverage position with respect to Mr. Glaser being a "non-insured." *See* D.E. 217 at 5. To the contrary, Indian Harbor's position is that Mr. Glaser may qualify as an "Insured" under certain Coverage Parts of the Policy, but that he is not entitled to coverage under the various terms and conditions of those Coverage Parts (*e.g.*, under the IAPL Coverage Part, there has been no Claim made against Mr. Glaser for a "Wrongful Act," which is defined, in relevant part, as any actual or alleged act, error, omission, misstatement, misleading statement or breach of fiduciary or other duty by any Insured in the performance of, or failure to perform "Professional Services"). *See* July 9, 2007 letter from Cathy Simon to Robert Glaser (D.E. 40, Ex. G), at 7-8.

Higer Lichter & Givner

Thus, the MapleWood Entities have not provided any "newly discovered evidence" to warrant reconsideration of the Order.

## III. THE MAPLEWOOD ENTITIES FAIL TO IDENTIFY ANY INTERVENING CHANGE IN LAW AND, INSTEAD, RE-PACKAGE PRIOR UNSUCCESSFUL LEGAL ARGUMENTS

Although the Motion is full of legal arguments, noticeably absent is a single citation to controlling authority decided *after* the prior unsuccessful brief (D.E. 66) submitted by the MapleWood Entities on March 16, 2011 (and only one citation to any case (a Minnesota case) decided *after* submission of the MapleWood Entities' prior unsuccessful brief). *See generally* D.E. 217. Unable to show an intervening change in law, the MapleWood Entities simply re-package legal arguments that have been fully briefed and ruled against them by this Court already. *See Scheck*, 798 F. Supp. at 693 n.2 ("[A] motion for reconsideration should not be used to reiterate arguments previously made or as a vehicle to present authorities available at the time of the first decision."); *see also Linet, Inc. v. Village of Wellington, Florida*, 408 F.3d 757, 763 (11th Cir. 2005) (affirming denial of reconsideration where movant merely "disagreed with the district court's treatment of certain facts and its legal conclusions" in the earlier order).[4] *Cf. Bautista v. Cruise Ships Catering & Serv. Int'l, N.V.*, 350 F. Supp. 2d 987, 992 (S.D. Fla. 2004) (explaining that, in the context of a Rule 60 motion for reconsideration, "any arguments the movant failed to raise in earlier motions will be deemed waived").

### A. All of the Arguments Related to the Common Interest Exception Previously Have Been Asserted and Rejected.

The MapleWood Entities argue, *for the third time*, that Indian Harbor did not share "common interests" with the "MapleWood Client Group." *See* D.E. 217 at 5. In support of their

---

[4] As shown below, perhaps most striking is that the MapleWood Entities' attempts to make these same arguments again are often done by cutting and pasting virtually verbatim the arguments from prior briefing.

erroneously narrow construction of the common interest exception, the MapleWood Entities rely on the following: (i) not all of the "MapleWood Client Group" were entitled to coverage under the Policy; (ii) the MapleWood Entities, not Indian Harbor, controlled the defense; and (iii) Indian Harbor did not pay a portion of defense fees before all of the Underlying Matters were settled. *See* D.E. 217 at 5-11. These arguments already have been asserted by the MapleWood Entities in conjunction with Indian Harbor's motion to compel and rejected by the Court.

First, the argument that the common interest exception is inapplicable because some of the "MapleWood Client Group" do not qualify for coverage under the Policy has been argued multiple times by the MapleWood Entities:

- "Indian Harbor has also denied coverage for most of the MapleWood defendants, all of which are represented by Akerman Senterfitt. There simply cannot be any 'common interest' between Indian Harbor and those MapleWood entities and individuals that the carrier maintains are not covered under the policy." *See* D.E. 40 at 9.

- "Moreover, Indian Harbor also denied coverage for most of the MapleWood defendants, all of which are represented by Akerman. (In addition to Partners, Akerman represented MapleWood Holdings, MapleWood Management, Robert V. Glaser, Robert J. Peale, Rick Levitt, Bill Tillet, Greg Morris, and Glen Dell.) There simply cannot be any 'common interest' between Indian Harbor and those entities and individuals that the carrier maintains are not covered under the policy." *See* D.E. 66 at 12 n.4.

Second, the MapleWood Entities have repeatedly argued that there is no common interest because the MapleWood Entities, not Indian Harbor, controlled the defense:

- "MapleWood, *not* Indian Harbor, selected and retained Akerman Senterfitt years before Indian Harbor ever agreed to participate in the funding of the defense. Akerman Senterfitt has never represented Indian Harbor. To the contrary, since the filing of the first underlying suit (February 15, 2007), MapleWood has funded and controlled its own defense." *See* D.E. 40 at 9.

- "MapleWood, not Indian Harbor, selected and retained Akerman years before Indian Harbor ever agreed to participate in the funding of the defense. Akerman never represented Indian Harbor, and never had Indian Harbor as a client." *See* D.E. 66 at 12.

Third, the MapleWood Entities have labored to underscore the date when Indian Harbor began reimbursing legal fees (at all times failing to mention that Indian Harbor's obligation to reimburse legal fees only incepts once the Policy's retention has been satisfied):

- "Indian Harbor did not begin funding MapleWood's defense until January 27, 2009, almost two months after MapleWood sued the carrier and twenty-three months after receiving notice of the first underlying suit." *See* D.E. 40 at 9.

- "Indian Harbor did not begin funding MapleWood's defense until January 27, 2009, almost two months *after* MapleWood sued the carrier and twenty-three months *after* receiving notice of the first underlying suit, and even then only funded 5.5% of the defense expenses." *See* D.E. 66 at 12 (emphasis in original).

Under law from this Circuit that precludes reconsideration of arguments previously made, the Court need not rule on these same arguments regarding the common interest exception again.

## B. Similarly, All of the Arguments Related to the Doctrine of At-Issue Waiver Previously Have Been Asserted and Rejected.

As with the re-packaged arguments related to the common interest exception, the MapleWood Entities' argument that they did not put the coverage issue of allocation "at issue" (D.E. 217 at 11-16) is not new:

- "MapleWood has in no way placed its privileged communications at issue in this case. Nor has Indian Harbor shown that MapleWood intends to use Akerman Senterfitt's legal analyses or privileged communications to support its coverage arguments. Rather, the insurer's argument is essentially that MapleWood has waived its privileges merely by seeking coverage under the policies." *See* D.E. 40 at 15.

- "The 'at issue' doctrine does not apply because 'allocation' is an affirmative defense that, as such, has been injected into the case by the defendant, Indian Harbor. 'Challenging' an affirmative defense does not put the issue in play; obviously, MapleWood would have no 'allocation' defense to challenge if Indian Harbor had not first raised the issue (as an affirmative defense)." *See* D.E. 66 at 16.

- "Without proof from the defendant at trial on the issue, nothing on that subject
  will be 'at issue' at the trial. *Ergo*, it is the defendant who puts 'at issue' anything
  that is in the nature of an affirmative defense." *See* D.E. 111 at 9.[5]

Thus, the Court need not rule on these same arguments again.

## IV. EVEN IF THIS COURT AGREES TO RULE ON THE RE-PACKAGED ARGUMENTS AGAIN, THE MAPLEWOOD ENTITIES HAVE NOT MET THEIR EXCEPTIONALLY HIGH BURDEN OF SHOWING "CLEAR ERROR" OR "MANIFEST INJUSTICE."

"In order to demonstrate clear error, [a party] must do more than simply restate their

previous arguments, and any arguments [a party] failed to raise in the earlier motion will be

deemed waived." *See Garcia*, 2002 U.S. Dist. LEXIS 23962, at *2. Indeed, "[i]t is an improper

use of the motion to reconsider to ask the Court to rethink what the Court . . . already thought

through - rightly or wrongly." *See id.* In particular, relief under Rule 60(b)(6) – which the

MapleWood Entities attempt to invoke – "is an extraordinary remedy which may be invoked

only upon a showing of exceptional circumstances." *See Solomon v. DeKalb County*, 154 Fed.

Appx. 92, 93 (11th Cir. 2005). Here, far from demonstrating "clear error" or "manifest

injustice," the MapleWood Entities have simply demonstrated that they disagree with the Court's

reasoning and ruling in the Order. This, of course, is not a ground for reconsideration. *See City

of Lakeland*, 189 F.R.D. at 489-90.

---

[5] The MapleWood Entities' remaining arguments are similarly repetitive: (1) the MapleWood Entities' argument in § II.(C)(3) regarding *Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co.*, No. C-88-3440-DLJ, 1992 U.S. Dist. LEXIS 20860 (N.D. Cal. Dec. 8, 1992), was asserted by them in prior briefing (*see* D.E. 40 at 15 n.9 ("Although the court in *Safeway* held that National Union was entitled to access privileged communications relating to the settlement of the shareholder actions which bear upon the allocation issue, it permitted only 'limited allocation discovery.'")); and (2) the MapleWood Entities' argument in § II.(C)(4) that Akerman's opinion work product is "unnecessary" for Indian Harbor to conduct an allocation analysis is also a repeat argument (*see* D.E. 40 at 14 ("Moreover, whatever allocation analysis Indian Harbor contends it must do, it can accomplish by relying on its own expert adjusters to establish the extent of MapleWood's liability, the reasonableness of the damages in comparison to compensatory awards in other cases, and the expense that would have been required for the settling defendants to defend the lawsuit.")).

9

Higer Lichter & Givner

A.  **The Court Correctly Applied the Common Interest Exception in Holding that the Attorney-Client Privilege Did Not Apply to the Documents at Issue.**

1.  *As the Court Held, Indian Harbor and the MapleWood Entities Had a Common Interest in Defeating Liability in the Underlying Matters.*

The Court, noting that Indian Harbor "shared a common interest [with the MapleWood Entities] in defeating liability in the [Underlying Matters,]"[6] held that the MapleWood Entities "have failed to show that [Judge Turnoff's] Order's application of the common interests exception to the instant case is contrary to law." D.E. 187 at 10-11. Although the MapleWood Entities contend that the Court "overlooked controlling law" that the common interest exception is inapplicable, in support, they simply re-hash their arguments from prior briefs.

For example, the MapleWood Entities argue that the exception does not apply because Indian Harbor was not a "client" of Akerman Senterfitt, LLP ("Akerman"). *See* D.E. 217 at 6-9. The MapleWood Entities make no attempt, however, to show "clear error" or "manifest injustice" in the Court's ruling that "the lack of official status of joint clients is not fatal to the application of the common interests exception in cases where the substance of the litigants' relationship to the underlying defense counsel fulfills the statutory requirements of the common interests exception." *See* D.E. 187 at 9. Supporting this conclusion, the Court highlighted (which the MapleWood Entities do not rebut) that Indian Harbor: (i) consulted Akerman in common with the MapleWood Entities, as illustrated by the "Pre-trial Report" that discusses liability, damages and the risks of settling and defending the MapleWood Entities;[7] (ii) paid a

---

[6] Under Florida law, insurers and their insureds share a common interest in defeating underlying liability claims against the insured, which means that their communications with defense counsel are not privileged as to one other. *See* D.E. 74 at 5 (and cases cited therein).

[7] The February 9, 2010 Pre-trial Report prepared by Akerman states that "[t]his letter contains my mental thoughts and impressions regarding defense of the claims on behalf of our clients, and therefore is subject to the attorney work product protection and should not be disclosed to any person other than your client." *See* Ex. C. Moreover, the Report contains Akerman's assessment of "the financial and legal risks and benefits of settling and defending Plaintiffs in one of the

portion of Defense Expenses prior to settlement of all of the Underlying Matters;[8] (iii) was

involved in the defense of the Underlying Matters; and (iv) shared a common interest in

defeating liability in the Underlying Matters. *See* D.E. 187 at 10. Buttressing the Court's

conclusion is subsequent testimony from the MapleWood Entities' defense counsel, Brian Miller

of Akerman, that he had multiple conversations with Indian Harbor's counsel regarding his

mental impressions concerning the defense of the *RRGC* Action. *See* Ex. D at 77:11-23.[9]

Similarly, the MapleWood Entities fall back on the argument, already asserted multiple

times, that "MapleWood, not Indian Harbor controlled the defense." *See* D.E. 217 at 8. This

argument, again, ignores that the applicable Florida decisions turn on the common interest shared

by the insurer and the insured in defeating liability in the underlying litigation – an interest that

exists regardless of whether the insurer or the insured controls the defense. *See* D.E. 74 at 6. For

example, and as the Court noted in its Order, in *Liberty Mut. Fire Ins. Co. v. Kaufman*, 885 So.2d

905, 908 (Fla. 3d DCA 2004), the *Kaufman* court applied the common interest exception even

though the insurer specifically reserved its rights in defending the insured in the underlying

lawsuit. *See* D.E. 187 at 10-11. The MapleWood Entities do not explain how the Court's

---

Underlying Matters." *Id.* Thus, and as the Court found, Indian Harbor and the MapleWood
Entities "consult[ed] Akerman in common" regarding the defense of the Underlying Matters.
*See* D.E. 187 at 10.

[8] The MapleWood Entities suggest, without citation to legal authority, that the common interest
doctrine should not apply because Indian Harbor did not begin reimbursing Defense Expenses
until January 27, 2009. *See* D.E. 217 at 10-11. As the Court noted, however, Indian Harbor
began reimbursing portions of Defense Expenses before all of the Underlying Matters were
settled. *See* D.E. 187 at 10. Rather than dispute this (because they cannot), the MapleWood
Entities suggest that this fact loses "weight" because the *Green* and *Shashy* Actions had already
settled (even though the *RRGC* Action, the Underlying Matter for which the MapleWood Entities
seek from Indian Harbor the vast majority of their double recovery, had not). *See* D.E. 217 at
10. The MapleWood Entities fail to mention, however, that Indian Harbor *had no obligation* to
pay Defense Expenses until the MapleWood Entities satisfied the Policy's retention. *See* D.E. 42
at 3-4; D.E. 40, Ex. M (forwarding payment after satisfaction of retention).

[9] Mr. Miller also testified that he provided status updates to Indian Harbor regarding the *RRGC*
Action both when requested and on his own accord whenever "something material took place in
the litigation." *See* Ex. D at 96:1-9.

interpretation and application of *Kaufman* is "clear error" or "manifest injustice" (indeed, they ignore this portion of the Court's Order – and *Kaufman* – altogether).

Finally, the MapleWood Entities cannot show that *Omega Consulting Grp., Inc. v. Templeton*, 805 So.2d 1058 (Fla. Dist. Ct. App. 2002), is "inapplicable," let alone that the Court's reliance on *Omega* was "clear error" or "manifest injustice." In its Order, the Court, after explaining that the lack of official status as joint clients is not fatal to the application of the common interest exception, cited *Omega* as an example of a Florida court applying the common interest exception "where one of the litigants was not a joint client of the attorney involved in the privileged communications." *See* D.E. 187 at 10. The MapleWood Entities do not dispute that *Omega* stands for this result. *See* D.E. 217 at 9-10. Rather, the MapleWood Entities attempt to make much of the fact that *Omega* was a shareholder derivative action and "Indian Harbor is not a majority owner of MapleWood." *See id.* The MapleWood Entities, however, miss the broader point: that Florida law recognizes that the common interest exception can apply without two parties having "official status" as joint clients. *See Omega*, 805 So.2d at 1059; D.E. 187 at 9-10.

Thus, the MapleWood Entities have not met their burden of showing "clear error" or "manifest injustice" with regard to the facts or law relied upon by the Court in concluding that the MapleWood Entities "have failed to show that [Judge Turnoff's] Order's application of the common interests exception to the instant case is contrary to law." *See* D.E. 187 at 11.

> **2.      *The Presence of MapleWood Holdings and the Intervenors in the Client Group Does Not Warrant Reconsideration of the Court's Application of the Common Interest Exception.***

As a preliminary matter, and as Indian Harbor explained in prior briefing, if MapleWood Holdings (or Intervenors) have a legitimate concern about a waiver of privilege to third parties, the parties in this action have agreed to a protective order pursuant to which the documents

Higer Lichter & Givner

produced will remain privileged from discovery by third parties. *See* D.E. 42 at 5. The existence of this protective order, and the grounds set forth in this opposition brief, further underscores that the MapleWood Entities (and Intervenors) cannot meet their rigorous burden of showing that, absent reconsideration, "an 'extreme' and 'unexpected' hardship will result." *See Solomon*, 154 Fed. Appx. at 93.

The MapleWood Entities now contend that the privilege does not apply because of the representation of insured and uninsured parties. D.E. 217 at 6. However, the MapleWood Entities previously *admitted* that the Underlying Actions were defended pursuant to a joint defense privilege among the insured and uninsured defendants. *See* D.E. 40 at 16 n.10. What this means, of course, is that the common interest among *all* parties to the defense – including Indian Harbor – remains intact.

Moreover, the MapleWood Entities' argument that the common interest exception is inapplicable in its entirety due to the presence of non-insured MapleWood Holdings and "non-insured" Robert Glaser is factually misleading and incorrect. MapleWood Holdings is the General Partner of MapleWood Partners and MapleWood Management. *See* Ex. E. Robert Glaser is the Managing Member of MapleWood Holdings, but he is also an employee of MapleWood Partners, an Insured under the Policy. *See id.* During Mr. Glaser's deposition,[10] he clarified that in business communications, he is acting in his capacity as an employee of MapleWood Partners and that *if* he was acting on behalf of MapleWood Holdings, it would *only* occur "through execution of a document from MapleWood Holdings:"[11]

> Q:      Is it possible then you could act on behalf of MapleWood Holdings and use MapleWood Partners' letterhead?

---

[10] Mr. Glaser testified as the corporate representative for all of the MapleWood Entities. *See* Deposition of Robert Glaser dated May 17, 2011 (Ex. F), at 6:9-21.

[11] Mr. Glaser testified that MapleWood Holdings has its own letterhead. *See* Ex. F at 118:17-19.

...

**Mr. Glaser:**  No.  If I were to act on behalf in a formal legal way of MapleWood Holdings, it would be through execution of a document from MapleWood Holdings.

**Q:**  What about on an informal basis?

**Mr. Glaser:**  I'm an employee of MapleWood Partners *so when I write e-mails and make telephone calls or get telephone calls I get them in my capacity as an employee of MapleWood Partners.*

*See* Ex. F at 119:2-14 (emphasis added).

Here, of the 708 communications listed on the privilege log, the MapleWood Entities do not point to a single instance where Mr. Glaser (or anyone else) is purporting to communicate through MapleWood Holdings or where Mr. Glaser (or anyone else) has executed a document on behalf of MapleWood Holdings. *See* D.E. 217.  Similarly, the MapleWood Entities do not identify a single document where Mr. Glaser is communicating on his own, personal behalf. *See id.* Rather, as Mr. Glaser's deposition testimony emphasizes, in each of the entries on the privilege log in which Mr. Glaser is identified as a sender or recipient, Mr. Glaser was communicating in his capacity as an employee of MapleWood Partners. *See* Ex. F at 119:2-14. And because MapleWood Partners is the Named Insured under the Policy and had a common interest with Indian Harbor in defeating liability for the Underlying Matters, the MapleWood Entities' purported concern that "Holdings and Glaser cannot lose their right to protect privileges which they hold based on actions taken by co-holders of their privileges" (*i.e.*, MapleWood Partners) is unfounded.[12]

---

[12] Not only is this argument unfounded but, as previously mentioned, it is a classic "straw man" argument because the privilege log does not actually reflect (and neither the MapleWood Entities nor the Intervenors have pointed to) any communications involving MapleWood Holdings or Robert Glaser in his individual capacity. In any event, as courts from various jurisdictions recognize, "[a] client who is part of a joint defense arrangement is entitled to waive the privilege for his own statement, and his co-defendants cannot preclude him from doing so." *See, e.g., United States v. Agnello*, 135 F. Supp. 2d 380, 383 (E.D.N.Y. 2001) (citing *In re Grand Jury*

Similarly, the MapleWood Entities' argument with regard to the recent Intervenors (Robert Reale, Lt. Gen. Burton Glosson, Rick Levitt, Bill Tillet, Greg Morris, and Glen Dell) is equally faulty. As a preliminary matter, the rights that these Intervenors now seek to enforce have not changed since the date that Indian Harbor first filed its motion to compel; thus, the arguments that they now raise should have been asserted months ago. *See Bautista*, 350 F. Supp. 2d at 992 (S.D. Fla. 2004) ("[A]ny arguments [in a motion for reconsideration] the movant failed to raise in earlier motions will be deemed waived."). In any event, Messrs. Reale, Levitt, Tillet, Morris and Dell are all current or former employees of MapleWood Partners (*see* Ex. E) and, therefore, the same reasoning above that applied to communications involving Mr. Glaser applies to them. In this regard, the MapleWood Entities fail to mention that the Intervenors' names either appear on a very small percentage of the entries on the privilege log or, in the case of Mr. Dell, do not appear on any of the entries at all. *See* Ex. G.[13]

Thus, the attempt to raise the rights of these members of the Client Group is nothing but a red herring and should not change the Court's holding that the MapleWood Entities cannot withhold the documents at issue on the basis of attorney-client privilege.

**B.      The Court Correctly Applied the Doctrine of At-Issue Waiver in Holding that Work Product Immunity Had Been Waived as to the Documents at Issue.**

The MapleWood Entities do not show "clear error" or "manifest injustice" in the Court's application of the doctrine of at-issue waiver. *See* D.E. 217 at 11-20. Rather, they employ a two-pronged strategy of: (i) re-litigating their arguments from prior briefs; and (ii) pointing out

---

*Subpoena Duces Tecum*, 112 F.3d 910, 922 (8th Cir.)); *see also In re Grand Jury Subpoena*, 274 F.3d 563, 572-73 (1st Cir. 2001) ("[T]he existence of a joint defense agreement does not increase the number of parties whose consent is needed to waive the attorney-client privilege[.]").

[13] Mr. Dell's name does not appear on any entries; Mr. Morris' name appears on less than 1% of the entries; Mr. Reale's name appears on 7% of the entries; Mr. Tillett's name appears on 8%; of the entries Mr. Levitt's name appears on 11% of the entries; and, Mr. Glosson's name appears on 18.5% of the entries *See* Ex. G.

**Higer Lichter & Givner**

their disagreement with case law cited in the Order. *See id.* As previously noted, however, this approach cannot form the basis of a successful motion for reconsideration under Rule 60(b).

### 1. As the Court Found, the MapleWood Entities Put at Issue Indian Harbor's Interim Allocation.

The Court correctly found that the MapleWood Entities "have haled Indian Harbor into court by bringing the instant suit, and they have specifically contested Defendant's interim allocation between covered and uncovered losses." *See* D.E. 187 at 16 (citing D.E. 1 (the MapleWood Entities' Original Complaint), at ¶¶ 61, 215; D.E. 100 (the MapleWood Entities' Amended Complaint), at ¶¶ 66, 129, 224; D.E. 100 (the MapleWood Entities' Supplemental Amended Complaint), at ¶¶ 66, 129, 224). In the Motion, the MapleWood Entities disagree and assert, yet again, that they have not put "allocation at issue" because they did not "put at issue any relative exposure facts." *See* D.E. 217 at 11-12. This assertion, however, flies in the face of all three of their Complaints *and* their recent Motion for Partial Summary Judgment.[14]

In addition to the paragraphs identified by the Court in all three of the Complaints filed by the MapleWood Entities, in the operative pleading (the Supplemental Amended Complaint), the MapleWood Entities describe the purported duty owed to them by Indian Harbor as follows: "The insurance contract obligated the Insurer to perform certain duties, including the duty to timely pay Loss including Defense Expenses, *and, to seek allocation in good faith* and only if required by the Policy." *See* D.E. 100 ¶ 223 (emphasis added). Presumably as evidence of Indian Harbor's alleged breach of this duty, the MapleWood Entities alleged that "[a]fter the filing of this suit, the Insurer unilaterally determined to pay and paid a tiny fraction (roughly 6%)

---

[14] This Court already has rejected the MapleWood Entities' attempt to assert that this issue is a byproduct of Indian Harbor's affirmative defense of allocation, rather than the MapleWood Entities' pleading of the allocation clause in the Complaint. *See* D.E. 187 at 17 n.9 ("Plaintiffs' argument that their assertion of work product immunity results from Defendant's reference to the allocation clause in its second and tenth affirmative defenses holds no merit. These affirmative defenses are Defendant's arguments regarding allocation, made in response to Plaintiffs' specific pleading of the allocation clause in their Complaint.").

Higer Lichter & Givner

of the total Loss incurred by the Policyholders, claiming this was its 'good faith' effort to first improperly allocate, *and then to arrive at an interim 'undisputed allocation.'*"   *Id.* ¶ 132 (emphasis added).   Thus, the propriety of Indian Harbor's interim allocation has been put squarely at issue by the MapleWood Entities' Complaint. *See id.* ¶¶ 223-24.[15]

The MapleWood Entities continued to put Indian Harbor's interim allocation at issue in their recently filed Motion for Partial Summary Judgment:

- "Indian Harbor's right to resort to allocation as a means of reducing a coverage claim requires more than its determination that 'loss' is present in the claim – a determination which Indian Harbor has denied making and, indeed, could not have made. In addition, to preserve its right to an allocation determination by a court Indian Harbor must, at the time it is presented with such a claim, make an allocation proposal that reflects its 'best efforts to determine a fair and appropriate allocation' and, in the absence of a provisional agreement on allocation, Indian Harbor must advance that portion of the claim 'not in dispute,' *i.e.*, a portion not less than that which Indian Harbor has itself proposed." D.E. 150 at 26 (citing the Policy's allocation clause).

- "In addition, it is undeniable that the portion of the Defense Expense claim that Indian Harbor has paid is not only less than the 'undisputed portion' that it was required by the Policy to pay, but radically less." *See id.* at 27.

- "In a nutshell, Indian Harbor breached two antecedent obligations under the Allocation Clause: (i) it failed to proposed a 'best efforts' allocation; and (ii) it advanced far less than the amount of the undisputed portion of the claim." *See id.* at 29.[16]

Even the MapleWood Entities' expert witness, Jeffrey M. Posner, rendered an opinion specifically regarding the adequacy of Indian Harbor's interim allocation:

> Assuming an allocation of Defense Expenses is permitted under the Policy, which is disputed by MapleWood, Indian Harbor did not employ

---

[15] It is unclear what the MapleWood Entities hope to achieve by stating, with no legal authority, that "MapleWood is not challenging Indian Harbor's 'interim allocation,' but rather it is challenging the application of the Allocation Clause to its coverage claim." *See* D.E. 217 at 12.

[16] In addition, approximately twenty of the MapleWood Entities' "Undisputed Material Facts in Support of Plaintiffs' Motion for Partial Summary Judgment" relate to Indian Harbor's interim allocation. *See* D.E. 163 ¶¶ 156-173.

> its best efforts or act in accordance with the customs, practices, and/or
> standards of the industry when it (i) offered a 25% allocation without any
> documentation or explanation with respect to how the 25% was derived;
> (ii) failed to increase its 25% allocation offer after the underlying cases
> were settled and certain previously cited defenses to coverage were no
> longer potentially applicable. Moreover, the offer of 25% appears to be
> an unreasonable figure based upon the facts and circumstances,
> particularly as they pertain to Defense Expenses. It should also be noted,
> as stated in the background section of this report, that the 25% figure, in
> reality, is 13.2% because Indian Harbor allocated amounts under the
> Retention.

*See* Expert Report of Jeffrey M. Posner.[17]

Thus, not only do their three Complaints put Indian Harbor's interim allocation at issue,

but so do the MapleWood Entities' recent dispositive motion and expert report.

### 2. *The Court Correctly Ruled That Waiver of Opinion Work Product is Appropriate Under the Doctrine of At-Issue Waiver.*

The MapleWood Entities dedicate several pages of the Motion providing their

interpretation of each of the cases cited by the Court, which interpretation is *always* different

than the Court's characterization of those same cases. *See* D.E. 217 at 13-16. However, the

MapleWood Entities do not come close to showing "clear error" or "manifest injustice" in the

application of these cases by the Court. *See Colomar v. Mercy Hospital, Inc.*, 242 F.R.D. 671,

684 (S.D. Fla. 2007) (noting that mere disagreement "with the district court's treatment of

---

[17] In light of this, it is curious that the MapleWood Entities state that the parties' experts do not
need the documents at issue to discuss the allocation issue injected by them. *See* D.E. 217 at 16-
18. Indeed, Indian Harbor's expert witnesses rendered their opinions based on information
available to them, but were aware of this outstanding discovery and expressly reserved their
rights to amend or supplement their opinions based on such additional information. *See, e.g.*,
Excerpt of Expert Report of Donald Colleluori, Ex. H, at 2 n.1. Similarly, the MapleWood
Entities' assertion that Akerman's work product is unnecessary for Indian Harbor to conduct an
allocation analysis ignores the Court's finding on this issue. *Compare* D.E. 217 at 18-20, *with*
D.E. 187 at 17-18 ("[T]he documents Defendant requested are vital to its defense. To deny
Defendant's request would deprive it of the sole source of information needed to compare the
accuracy and propriety of the assessments (that informed its own allocation), to those relied upon
my Plaintiffs.").

certain facts and its legal conclusions" is not enough to meet a movant's burden on a motion for reconsideration) (citation omitted).

For example, the Court cited to *Tolz v. Geico Gen. Ins. Co.*, No. 08-80663, 2010 U.S. Dist. LEXIS 6709 (S.D. Fla. Jan. 27, 2010), and *Stern v. O'Quinn*, 253 F.R.D. 663, 676-77 (S.D. Fla. 2008), because, as here, the issue "injected into the heart of the instant case concerns the mental impressions and opinions of Plaintiffs' attorneys in the Underlying Matters." *See* D.E. 187 at 14-15. Significantly, the MapleWood Entities do not show any error in the Court's application of *Tolz* and *Stern* on this point. *See* D.E. 217 at 14-16. Instead, the MapleWood Entities cite to a subsequent order from the *Tolz* court, which merely complied with the Order for an *in camera* inspection based on the ruling that opinion work product had been put at issue. *See* D.E. 217, Ex. G at 2. Similarly, the MapleWood Entities attempt to distinguish *Stern* by asserting that it contained "dramatically different facts." *See* D.E. 217 at 15. The Court, however, did not cite *Stern* based on its factual congruity with this action. *See* D.E. 187 at 14-15. Rather, *Stern* is an example of the doctrine of at-issue waiver being applied to an attorney's opinion work product. As the Court explained, the facts of this case "fall within the parameters of those cases applying the at-issue doctrine as a waiver of work product immunity." *See id.*

Furthermore, the MapleWood Entities ignore, as the Court found in its Order, that "[t]he descriptions of many documents identified in the privilege log do suggest a high degree of relevance to assessments of legal exposure and financial benefits of settling or defending," as reflected in: "(1) the respective liability of all defendants in the Underlying Matters as it affected the final settlement amounts[;] (2) respective exposure of each claim in the Underlying Matters as they contributed to the final settlement amounts[;] and (3) joint representation of parties in the Underlying Matters by Akerman and the apportionment of attorney's fees[.]" *See id.* at 17 n.10.

Higer Lichter & Givner

Thus, the MapleWood Entities fail to show "clear error" or "manifest injustice" with the Court's holding that by placing Indian Harbor's allocation at issue, the MapleWood Entities have waived work product immunity over the documents at issue.

## V.   THE MAPLEWOOD ENTITIES' REQUEST FOR CLARIFICATION SHOULD BE DENIED

The MapleWood Entities list three questions in their request for clarification of the Order, none of which merit the relief sought. <u>First</u>, the Court explicitly addressed, and has clearly considered, which documents may be submitted by the MapleWood Entities for an *in camera* review. <u>Second</u>, the Court was, again, crystal clear that work product immunity has been waived for *all* 708 documents as a result of the MapleWood Entities placing allocation at-issue, not to mention that the MapleWood Entities' proposal would impermissibly permit them to self-determine and withhold documents not "arguably relevant to Indian Harbor's interim allocation[.]" *See* D.E. 187 at 17-18. <u>Third</u>, the MapleWood Entities already have unsuccessfully argued that Indian Harbor cannot have access to "all of MapleWood's privileged communications and Akerman Senterfitt's legal analysis." *See* D.E. 40 at 15 n.9; 20. Thus, their attempt to re-cast this argument on the basis of seeking clarification regarding an "insurance coverage privilege" should not be countenanced. Indeed, the Court could not have been clearer that *all* documents, other than those carved out for *in camera* review, must be produced to Indian Harbor.

**CONCLUSION**

For the foregoing reasons, Indian Harbor respectfully requests that this Court deny the MapleWood Entities' Motion, lift the stay previously granted, and order the MapleWood Entities to produce the documents in question within five days of the date of this Court's Order.

20

**Higer Lichter & Givner**

Respectfully submitted,

*Attorneys for Defendant*

Higer Lichter & Givner, LLP
18305 Biscayne Blvd., Suite 302
Aventura, FL 33160
Telephone: (305) 933-9970
Facsimile: (305) 933-0998

By: s/Christopher J. Maranges
 Michael J. Higer
 Florida Bar No.: 500798
 MHiger@hlglawyers.com
 Christopher J. Maranges
 CMaranges@hlglawyers.com

and

David M. Gische (*pro hac vice*)
Prashant K. Khetan (*pro hac vice*)
Steven W. McNutt (*pro hac vice*)
Troutman Sanders, LLP
401 Ninth Street, N. W. Suite 1000
Washington, D.C. 20004-2134
Telephone: (202) 274-2950
Facsimile: (202) 274-2994

Higer Lichter & Givner

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 6th day of October, 2011, I served a true and correct copy of the foregoing on Plaintiffs' counsel listed below through the Court's ECF filing system.

/s/Christopher J. Maranges
Christopher J. Maranges

Richard Hugh Lumpkin
Maria Caldera
Ver Ploeg & Lumpkin
100 SE 2nd Street, 30th Floor
Miami, FL  33131-2158
Telephone:  305-577-3996
Facsimile:  305-577-3558
hlumpkin@vpl-law.com
mcaldera@vpl-law.com

John W. Schryber, Esq.
Jeffrey L. Schulman, Esq.
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, D.C.  20006-5403
Telephone:  (202) 420-2200
Facsimile:  (202) 420-2201
schulmanj@dicksteinshapiro.com
schryberj@dicksteinshapiro.com

*Counsel for Plaintiffs*

Higer Lichter & Givner